**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|                       |   |                        |
|-----------------------|---|------------------------|
|                       | * |                        |
| **RONALD PIACQUADIO,**| * |                        |
| **Plaintiff**         | * |                        |
| **v.**                | * | **CIVIL No. JKB-12-245** |
| **VERTIS, INC.,**     | * |                        |
| **Defendant**         | * |                        |
|                       | * |                        |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM and ORDER

Ronald Piacquadio ("Plaintiff") brought this suit against his former employer, Vertis, Inc. ("Defendant"), alleging breach of contract and violation of the Maryland Wage Payment and Collection Law ("WPCL"), MD. CODE ANN., LAB. & EMPL. § 3-501, *et seq.* Now pending before the Court is Defendant's Motion for Judgment on the Pleadings (ECF No. 17), which seeks dismissal of Plaintiff's claim under the WPCL. The issues have been briefed and no oral argument is required. Local Rule 105.6. For the reasons explained below, the motion will be DENIED.

## I.      BACKGROUND

In this employment dispute, Plaintiff sues his former employer to recover severance pay that he alleges is due.

Plaintiff began working for Defendant as an account executive in its "Integrated Media Solutions" division in 2002. He alleges that around 2008 Defendant's financial condition began to deteriorate and that rumors began to circulate among its employees that it might go out of

business.  According to Plaintiff, Defendant offered special severance pay packages to certain employees, including himself, to give them an incentive to stay with the company during its hard times.  The offer, contained in a document called the "Key Employee Agreement" (or "KEA"), consisted, in pertinent part, of the following terms:

> 1.  **Retention/Release Payment.**  Provided Employee:
>
>    (a)    Remains employed for as long as the Company requires and is not terminated for Cause;
>
>    (b)    Performs all services and tasks presently assigned to Employee and actively performs any additional services that may be assigned to Employee by the Company;
>
>    (c)    Returns any and all Company property in Employee's possession as of Employee's last day of employment, including, but not limited to, Company documents, files, computers and accessories, and any other Company owned items or equipment;
>
>    (d)    Has contemporaneously with execution of the Retention Agreement, executed a Business Responsibilities Agreement with the Company; and
>
>    (e)    Executes a General Release Agreement ("Release") in a form to be provided by the Company to Employee on the last day of Employee's employment;
>
> The Company will, on the first pay date following the eighth day after Employee's execution of the Release, pay Employee Employee's weekly severance payment, for a period of Fifty-Two (52) weeks, from which the Company will deduct the necessary state and federal withholding and FICA (the "Retention/Release Payment").  As a commissioned employee, your weekly severance payment is calculated by using your average weekly income as determined by your previous year's W-2 form. … If Employee either resigns or is terminated for "Cause" (as defined in paragraph 2, below), or fails to satisfy any of the conditions precedent to payment in subparagraphs (a)-(e), above, Employee will not be entitled to any Retention/Release Payment.

Plaintiff singed the KEA on or about March 31, 2008.  Shortly thereafter, Defendant filed a Chapter 11 bankruptcy petition.  Plaintiff remained an employee of Defendant throughout the bankruptcy process.  Defendant managed to emerge from its 2008 bankruptcy and stay in

business for another two years.  But, in November of 2010, Defendant filed a second Chapter 11 bankruptcy, which involved a more sweeping reorganization of the company.  Plaintiff alleges that one result of the reorganization was that Defendant was forced to downsize several of its divisions, including IMS, as a condition of procuring new loans.  In February of 2011, Defendant terminated Plaintiff's employment, allegedly due to poor performance.  Because Defendant asserted that it had terminated Plaintiff "for cause" it refused to pay him the 52 weeks of severance pay promised in the KEA.  Plaintiff, however, alleges that Defendant's real reason for terminating him was its need to downsize, and that it fabricated the "poor performance" rationale solely to avoid having to give him the severance pay, which he calculates at about $140,000.

In January of 2012, Plaintiff filed a complaint in this Court, alleging the facts set out above and asserting causes of action for breach of contract and violation of the Maryland Wage Payment and Collection Law.  Defendant filed an answer shortly thereafter.  On May 7, 2012, Defendant filed the instant motion, seeking dismissal of Plaintiff's WPCL claim on the grounds that the severance payments described in the KEA are not "wages" within the meaning of that statute.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed[,] but early enough not to delay trial."  When considering a motion for judgment on the pleadings, a court applies "the same standard" as for motions made pursuant to Rule 12(b)(6).  *Burbach Broad. Co. v. Elkins Radio Corp.,* 278 F.3d 401, 405–06 (4th Cir. 2002).  A motion to dismiss under Rule 12(b)(6) is a test of the legal sufficiency of a complaint.  *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims

"plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atlantic v. Twombly*, 550 U.S. 544, 556-57 (2007).   In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 129 S.Ct. at 1950.

## III.    ANALYSIS

The sole issue raised in this motion is whether the Retention/Release ("R/R") payments described in the KEA constitute "wages" under the Maryland Wage Payment and Collection Law.  As explained below, the Court finds that they do.

Maryland courts employ a two-part "bright line" test to determine whether a given payment is a "wage."  First, the payment must "have been promised as part of the compensation for the employment arrangement," and, second, "all conditions agreed to in advance" for earning the compensation must have been fulfilled. *Catalyst Health Solutions, Inc. v. Magill*, 995 A.2d 960, 969 (Md. 2010) (citing *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 672-73).  The Court finds that the terms of the KEA, as well as the facts alleged in the complaint, taken as true, establish that the R/R payments that Plaintiff seeks to recover in this action meet both criteria.  First, there cannot be any dispute that the R/R payments were "promised as part of the compensation" for Plaintiff's "employment arrangement" with Defendant.  The very first requirement set out in the KEA is that Plaintiff "remain employed [with Defendant] for as long

4

as [it] requires …."   Second, the complaint alleges that Plaintiff "fulfilled all his obligations under the Key Employee Agreement that would entitle him to the Retention/Release Payments." (Compl. at 5, ECF No. 1).  Plaintiff is not required to plead with any more specificity than this, and because this is a motion for judgment on the pleadings, the Court must draw all plausible inferences in his favor.  In the Court's view, it is entirely plausible to construe the above-quoted allegation as meaning that Plaintiff performed all of the obligations listed in Paragraph 1 of the KEA, including executing a Business Responsibilities Agreement ("BRA"), performing all tasks assigned to him, and returning all company property and signing a release of claims on the last day of his employment.  Assuming, as the Court must, that these allegations and the inferences drawn from them are true, it is clear that Plaintiff satisfied "all conditions agreed to in advance" for earning the R/R payments.  Thus, the R/R payments, as alleged in the complaint, are "wages" within the meaning of the WPCL.

Defendant urges the opposite conclusion, arguing that the R/R payments cannot be wages under the WPCL because one of the conditions of Plaintiff's receiving the payments was his execution of the BRA, which contained post-employment obligations, such as agreements not to compete with Defendant, disclose its confidential information, or solicit its customers or employees.  In Defendant's view, Maryland case law establishes that payments made in consideration of an employee's agreement to undertake such post-employment obligations cannot be wages.  The Court finds this reading of the case law to be inaccurate.

The seminal Maryland case on this subject, which Defendant cites in support of its motion, is *Stevenson v. Branch Banking and Trust Corp.*, 861 A.2d 735, 749 (Md. 2004).  There, the Maryland Court of Appeals held that severance pay could constitute a wage if it represented "deferred compensation for work performed during the employment," but not if it was "explicitly

a *quid pro quo*" for a non-compete agreement.  *Id.* at 749-50.  The *Stevenson* court determined

that the severance pay provision at issue in that case fell into the latter category because of

"cross-references" between it and another provision that forbade the employee from competing

with the employer for a certain number of months after employment.  Specifically, the agreement

provided that if the employee breached the non-compete provision, she would no longer be

entitled to receive the severance payments.  The court reasoned that, under these circumstances,

the employee could not possibly perform all the work necessary to earn the severance pay before

the end of her employment, and that it therefore could not be a wage.  *Id.* at 750.

Defendant argues that the same result should obtain here because the R/R payments

provided for in the KEA were a *quid pro quo* for Plaintiff's agreement not to compete with

Defendant after his employment.  The Court finds this reasoning to be flawed.  The key feature

of the agreement in *Stevenson* that made it a *quid pro quo* of severance pay for non-competition

was the fact that the plaintiff's receipt of the severance pay was actually conditioned on her

conduct after employment.  That is, it provided explicitly that if the employer found that the

plaintiff was competing with it while the agreement was in effect, then she would cease to be

entitled to the severance payments.  Here, on the other hand, Plaintiff was required only to

execute the BRA to become entitled to the R/R payments.  There is no suggestion in the KEA

that Defendant would stop making R/R payments to Plaintiff if it discovered that he was

competing with it post-employment.  In fact, the KEA does not mention any specific terms of the

BRA at all.  And, the BRA, for its part, does not mention the KEA.[1]  Rather, it states in clear

---

[1] Even though the BRA has come to the Court in exhibit form only as an attachment to Defendant's motion, and not the original pleadings, the Court may nonetheless rely on it in deciding this motion, as Plaintiff necessarily relies on an implied allegation that he executed the document in stating his claims in this case.  *See Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F.Supp.2d 678, 683 (noting that on a motion to dismiss, a court may consider "any documents referred to in the complaint and relied upon to justify a cause of action-even if the documents are not attached as exhibits to the complaint.").

terms that Plaintiff's execution of it is in consideration of his "employment or continued employment" with Defendant. Furthermore, the only remedy that it refers to for its breach is injunctive relief. Nowhere does it say or even suggest that a breach of its terms would divest Plaintiff of his right to any payments or benefits promised in another agreement. The Court therefore does not find that the R/R payments were a *quid pro quo* for Plaintiff's non-competition after employment.

Defendant also relies on this Court's decision in the case of *Makowski v. Bovis Lend Lease, Inc.*, Civil Action No. RDB 10-1844, 2011 WL 1045635 (D. Md. March 17, 2011). The agreement at issue in that case was a "separation agreement" that the defendant had allegedly offered to the plaintiff when he was terminated as part of a company-wide reduction-in-force. *Id.* at \*4,10. Judge Bennett observed that the Separation Agreement offered severance pay in exchange for, among other things, certain promises from the plaintiff, including a release of claims and a covenant-not-to-compete. *Id.* at \*10. Judge Bennett concluded that, "[a]s in *Stevenson,* the Separation Agreement in this case offers the severance payment in exchange for certain promises made by Makowski," and that "Thus, [his] right to severance payment was not solely based upon the work he performed before he was terminated as required under the Wage Act." *Id*.

This does little, if anything, to support Defendant's argument. The agreement at issue in *Makowski* was apparently offered to the plaintiff only when he was terminated, which is undoubtedly why it was titled a "separation agreement." By definition, the only possible consideration plaintiff could have given for the promised severance pay would have been a promise either to do or not to do something post-employment. That is almost the exact opposite of the scenario in this case, in which Defendant offered Plaintiff severance pay explicitly to

induce him to *continue* his employment.  Thus, *Makowski* could hardly be less apposite to the facts of this case, and the Court rejects Defendant's arguments to the contrary.

Instead, the Court finds that the case of *Provident Bank of Md. T/A v. McCarthy*, 383 F.Supp.2d 858 (D. Md. 2005) is instructive.  There, Judge Quarles of this Court ruled that an "imputed interest" provision in an employment agreement (which entitled the employee to receive a certain sum of money if he were terminated without cause) constituted a "wage" despite the existence of a non-compete provision and other restrictive covenants in the same agreement.  Judge Quarles distinguished the facts of that case from *Stevenson* by noting that while the non-compete and imputed interest provisions were contained in the same agreement, there were no cross-references between them that made plaintiff's receipt of the imputed interest contingent on his adherence to the non-compete provision.  *Id*. at 861.  He also noted that the lack of connection between the provisions was reinforced by the fact that the employer's sole remedy in the event that plaintiff breached the non-compete provision was injunctive relief, and did not include the right to withhold the imputed interest payment.  *Id*.

The only significant difference between the facts of this case and those of *Provident Bank* is that all of the contractual provisions at issue in *Provident Bank* were contained in a single document, whereas here the severance pay provisions and the post-employment restrictive covenants appear in separate documents.  Defendant attempts to turn this difference to its advantage by arguing that because the KEA required Plaintiff to execute both it and the BRA contemporaneously, it therefore contained the elusive "cross-reference" that was missing in the *Provident Bank* agreement.  That is a *non-sequitur*.  The "cross-reference" referred to in *Provident Bank*, and in *Stevenson*, which *Provident Bank* cited, was a statement in a provision for severance pay that explicitly conditioned an employee's receipt of the pay on the fulfillment

of a specific post-employment obligation.  In other words, the "cross-reference" is not simply any reference to another document or obligation, but one that creates an explicit *quid pro quo*. As already discussed above, the KEA's requirement that Plaintiff simultaneously execute a BRA does not accomplish this.

Indeed, the fact that Plaintiff had to execute the KEA and the BRA simultaneously in order to receive the R/R payments is merely a red herring with respect to the instant dispute. That scenario is no different than if Defendant had offered Plaintiff a single agreement containing all the provisions from both the KEA and the BRA.  There, too, he would necessarily have had to agree to the non-compete provision and other post-employment obligations in order to get the promised severance pay.  But, that is precisely the same contractual relationship that was at issue in *Provident Bank*; and, for that matter, it is the same relationship that is created by every employment contract that contains provisions for both compensation and post-employment restrictive covenants.  In all of these instances, the employee must agree to the restrictive covenants in order to get the benefit of employment, *i.e.*, compensation, and yet that fact does not preclude the compensation's being considered wages.  Rather, compensation has to be conditioned on the employee's actual performance of the post-employment obligations, not just his agreement to them in the first instance, before the compensation is removed from the category of "wages."  The agreements in this case do not appear to contain any such condition.

For all of the above-stated reasons, the Court concludes that Plaintiff has stated a claim under the WPCL.

## IV.      ORDER

Accordingly, it is ordered that Defendant's Motion for Judgment on the Pleadings (ECF No. 17) is DENIED.

Dated this 12th day of July, 2012

<div style="margin-left:40%">

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge

</div>